J-S15039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL RASHEAD JOHNSON | : | |
| | : | |
| Appellant | : | No. 1493 MDA 2021 |

Appeal from the PCRA Order Entered August 12, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003973-2008

BEFORE: BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:[*]　　　　　　　　**FILED NOVEMBER 07, 2024**

Daniel Rashead Johnson appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We reverse and remand for a new trial.

We summarized the background of this case as follows upon consideration of Appellant's direct appeal:

> On February 29, 2008, Mylik Young was killed when struck by a bullet shot from an assault rifle while seated in his vehicle outside of the Jazzland Bar, located in the 1900 block of Walnut Street in Harrisburg. When police arrived, Andre Pharris was standing nearby and identified the victim while indicating that he [had] been inside drinking with the victim. According to Mr. Pharris, he phoned [the victim] earlier in the evening and discussed meeting him for a drink. The two men made tentative plans to meet later in the evening. After a few hours had passed, [the victim] called Mr. Pharris and told him he could pick him up and go for a drink but that he would have time for just one. The

---

[*] This matter was reassigned to this author on August 26, 2024.

two men fatefully chose the Jazzland Bar as their drinking destination.

After arriving at the Jazzland, [the victim] ordered a beer while Mr. Pharris ordered both a mixed drink and a beer. [The victim] finished his beer before Mr. Pharris could finish both of his drinks and then began speaking on the phone with his girlfriend and told Mr. Pharris he would wait for him outside. A few minutes later, Mr. Pharris left the bar only to hear gunshots ring out, prompting him to duck for cover behind a van. When the gunfire stopped, Mr. Pharris observed a vehicle with its headlights pointed toward the bar. Two men jumped into the vehicle and it then sped off. Mr. Pharris ran to [the victim]'s car and observed [him] slumped over in the driver's seat. Mr. Pharris then unzipped the victim's coat and, seeing a gunshot wound, applied pressure to the wound while calling the police. Mr. Pharris then stayed with the victim until the police arrived a few minutes later.

Earlier that day, Michael Brown, a resident of Harrisburg but originally from Philadelphia, received a call from Vincent Hall-Wadley, also of Harrisburg, who proposed that the two look for some drug dealers to rob. Brown indicated his willingness to participate in the endeavor but suggested they go to Philadelphia to "get some muscle." The two men then drove to Philadelphia where they met up with and enticed both [A]ppellant [and] another Philadelphia man, David Young, to join them.

The four men then returned to Harrisburg and began searching for potential robbery victims. Along the way, they stopped at the residence of Hall-Wadley, where they retrieved an AK-47 assault style rifle. Their pursuit took them past the Jazzland Bar,[1] where they observed a vehicle belonging to a reputed drug dealer known as "Twain" or "Twan." Consequently, the men parked the vehicle and entered the Jazzland Bar. Once inside, Brown observed a man named Santos Gutierrez looking in his direction. Brown and Gutierrez had a bit of prior antagonistic history, and Brown took umbrage at the look given by Gutierrez. After the two had words, bar staff intervened and broke up the hostilities. Gutierrez, afraid that things might escalate, called his brother, Ricardo Antequera, and asked him to bring a gun. Brown overheard Gutierrez make the call requesting a gun and gave [A]ppellant the keys to the vehicle so that he could get outside to the car where the AK-47 was stowed.

_____

- 2 -

[1] Prior to visiting the Jazzland Bar, the men had stopped at a house from where marijuana was sold and another bar, Rebound, where it was believed drug dealers could be found. Hall-Wadley decided that he did not like the plan that had been formulated relative to the marijuana house, and no known drug dealers could be found at Rebound.

Shortly thereafter, Brown left with Young and ended up on Walnut Street as they made their way back to the car. At that point, Brown observed a SUV pull up and pass a gun to Gutierrez. Meanwhile, [A]ppellant and Hall-Wadley were standing aside their car; [A]ppellant was equipped with the AK-47. According to Brown, when Gutierrez received the gun from his brother, he cocked it and began walking toward Brown and Young. Soon thereafter, gunfire broke out. Young and [A]ppellant began firing in the direction of Gutierrez from their respective locations and either Gutierrez, or someone with him, returned fire. Numerous shots were fired, one of which struck the victim, who had been sitting in his car talking on his cell phone when the gunfire erupted.

When shots broke out, Brown ran down toward 18th Street. After the gunfire stopped, [A]ppellant, Young, and Hall-Wadley climbed in Brown's car and fled the scene. A short distance away, they encountered Brown, who then jumped in the vehicle. The four men fled to Philadelphia, unsure of whether or not anyone had been struck in the gunfire. However, [A]ppellant did comment that he thought he might have hit someone, referring to someone situated in a car who had "popped up," and that if he had struck someone, it was an accident.

Appellant was ultimately arrested on August 21, 2008 and charged with, *inter alia*, criminal homicide and [recklessly endangering another person ("REAP")]. Appellant proceeded to a jury trial held May 11-15, 2009. At the conclusion of the trial, [A]ppellant was convicted of first[-]degree murder and REAP. Appellant was immediately sentenced to life imprisonment on the murder charge and a concurrent term of [six] to [twelve] months' imprisonment on the REAP charge. [His direct appeal did not result in any relief.]

*Commonwealth v. Johnson*, 6 A.3d 571 (Pa.Super. 2010) (unpublished memorandum at 1-4), *appeal denied*, 20 A.3d 485 (Pa. 2011), *cert. denied sub nom.*, 565 U.S. 837 (2011).

Appellant initiated the PCRA proceedings *sub judice* by filing a timely *pro se* petition in 2011. Initially, the PCRA court appointed Jennifer Tobias, Esquire, to represent him. After she filed a supplemental petition, the court ordered her to locate Brown for an evidentiary hearing. Before that happened, Attorney Tobias was permitted to withdraw and Jonathan Crisp, Esquire, was appointed. Attorney Crisp pursued claims that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), and otherwise engaged in prosecutorial misconduct. In particular, Appellant alleged that the Commonwealth failed to fully disclose the benefits it offered Brown for testifying against Appellant, and failed to correct his false testimony denying any agreement for favorable treatment. The PCRA court held a hearing in April 2013, but left the record open for Attorney Crisp to find Brown and to obtain surveillance video. The PCRA judge then retired without disposing of the petition, and the matter was reassigned to a new judge.

The new presiding judge held a status conference in May 2015 and again provided additional time for the parties to locate Brown and the video footage. Counsel for the parties communicated further about the matter until the Commonwealth's counsel left the District Attorney's Office. Nothing further occurred on the case until Appellant filed for a writ of *mandamus* in federal

court in April 2019. The next activity in the PCRA court was Attorney Crisp's May 2021 motion to rule on the pending petition. As neither party had been able to locate Brown or the video, they agreed to close the record. The PCRA court entered an order on August 12, 2021, dismissing the petition upon concluding there were no issues of material fact to be resolved and no relief was due.

Appellant appealed and Kristen Weisenberger, Esquire, was appointed to represent him. In this Court, Appellant *pro se* filed a motion to remand for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). Therein, he asserted that he repeatedly attempted to contact Attorney Weisenberger through calls, emails, text messages, and letters about seeking a remand for him to challenge Attorney Crisp's effectiveness pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), but she did not respond. The PCRA court scheduled a **Grazier** hearing, and this Court stayed our briefing schedule pending the outcome thereof.

The PCRA court found that Appellant did not wish to represent himself, and Attorney Weisenberger filed a brief in this Court pursuant to our re-issued briefing schedule. However, because she did not include therein any of the **Bradley** claims Appellant wished to raise, Appellant retained current PCRA counsel to do so. Accordingly, PCRA counsel filed an application to strike Attorney Weisenberger's brief along with an application for remand pursuant

to **Bradley** to pursue claims that Attorney Crisp was ineffective for failing to raise eleven claims of trial counsel's ineffectiveness.

On July 20, 2022, this Court entered a *per curiam* order granting both requests. In particular, the order directed the prothonotary to strike Attorney Weisenberger's brief from the docket and remanded the case to the PCRA court "for a hearing regarding the ineffectiveness claims raised in the application." Order, 7/20/22. Inexplicably, instead of vacating the prior ruling and relinquishing jurisdiction to allow the PCRA court to enter a new appealable order based upon its findings, this Court's order retained jurisdiction over the matter and provided as follows:

> Following the hearing, the PCRA court shall issue its findings of fact and conclusions of law regarding the ineffectiveness claims. Appellant shall have [twenty-one] days following the filing of the PCRA court's findings to file a supplemental Pa.R.A.P. 1925(b) statement related to the PCRA court's ineffectiveness findings only, and the PCRA court shall have [twenty-one] days from the filing of the statement to file a supplemental opinion pursuant to Pa.R.A.P. 1925(a). The PCRA court shall transmit the certified record and the supplemental record to this Court within [ninety] days of the date of this order.

*Id*.

The PCRA court held a three-day hearing at which Attorney Crisp and Paul Muller, Esquire, who was both trial and direct appeal counsel, testified. Upon this evidence, the PCRA court concluded that Appellant was entitled to relief on three of his **Bradley** claims. Specifically, the court held that each of the three prongs of the ineffectiveness test as announced in **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987), was satisfied as to

- 6 -

Appellant's issues concerning the absence of certain jury instructions. *See* PCRA Court Opinion, 12/13/22, at 9-22, 26-28. Since the court concluded that the three proven ineffectiveness claims warranted a new trial, but it could not directly grant relief because we had retained jurisdiction over the appeal from the order denying Appellant's PCRA petition, it recommended that this Court grant Appellant a new trial based on the jury instruction claims. The PCRA court rejected the rest of Appellant's *Bradley* claims. Additionally, it declined to opine further on the *Brady* claim that Attorney Crisp litigated prior to the appeal because, *inter alia*, it concluded that the entitlement to relief on the other issues rendered any *Brady* violations moot. *Id*. at 30.

Back in this Court, Appellant filed a brief urging us to: (1) follow the PCRA court's recommendation on the three jury-instruction *Bradley* claims mentioned above, (2) conclude that the PCRA court erred in denying relief on a different *Bradley* claim addressed in the remand proceedings, and (3) hold that Attorney Crisp was ineffective for failing to competently litigate his *Brady* and prosecutorial misconduct claims. For these reasons, Appellant asserts that we should reverse the order that had dismissed his petition and grant him relief. *See* Appellant's brief at 8, 64. For its part, the Commonwealth argues that we affirm the PCRA court's initial order dismissing the Appellant's PCRA petition because none of his issues warrants relief. *See* Commonwealth's brief at 9, 33.

Before considering the substantive issues, we address this Court's retention of jurisdiction when it remanded for the PCRA court to conduct its inquiry. The proper procedure for an appellate court faced with *Bradley* claims that cannot be resolved upon the existing record is to vacate the initial order denying PCRA relief and to relinquish jurisdiction upon remanding to the PCRA court so that the court can address the new claims and enter a final order resolving the request for relief, after which any party aggrieved by that final order may appeal from it.[1] Since we did not follow the procedure in the instant case, the PCRA court lacked the authority to alter the order upon which our retained jurisdiction was founded.

_____

[1] *See*, *e.g.*, *Commonwealth v. Parrish*, 273 A.3d 989, 1007 (Pa. 2022) ("Parrish is entitled to a remand to present evidence and argument to substantiate his [*Bradley* claims]. Upon the PCRA court's grant or denial of this relief, if either Parrish or the Commonwealth appeal that determination, the PCRA court should file a supplemental [Rule] 1925(a) opinion to address that decision. Parrish's ineffectiveness claims raised in the appeal from the PCRA court's denial of his previously-filed PCRA petitions will then be considered."); *Commonwealth v. Greer*, ___ A.3d ___, 2024 WL 3766085, at *3 n.2 (Pa.Super. Aug. 13, 2024) (explaining that this Court was vacating the prior PCRA order, remanding to the PCRA court, and relinquishing jurisdiction, after the case had been remanded to us from our Supreme Court, in order "to reinstate the [PCRA] court's jurisdiction to take such action as it finds necessary" to resolve the *Bradley* claims raised on appeal); *Commonwealth v. Lawrence*, 309 A.3d 152, 156-57 (Pa.Super. 2024) (vacating the order denying the PCRA petition and remanding for the court to consider the *Bradley* claims raised on appeal and then to "enter a new final order disposing of all claims [the a]ppellant has raised in connection with the instant PCRA petition, after which any aggrieved party may seek appellate review" (cleaned up)).

However, we discern that the odd procedural posture does not preclude us from reviewing the PCRA court's findings and conclusions as to Appellant's *Bradley* claims. Rather than now vacating the order dismissing the petition and remanding for the PCRA court to enter an order effectuating its findings just to have the Commonwealth file a new appeal, for the sake of judicial economy we will regard as done that which ought to have been done. That is, we deem the petition to have been amended to raise the claims we remanded for the PCRA court to adjudicate, and proceed to address the parties' arguments concerning the propriety of the PCRA court's findings on the various claims for relief. *Accord McCormick v. Northeastern Bank of Pennsylvania*, 561 A.2d 328, 330 n.1 (Pa. 1989) (exercising jurisdiction over appeal taken before the trial court's verdict was reduced to judgment in the interests of judicial economy rather than remanding or quashing).

Here, the PCRA court found that three of Appellant's *Bradley* claims entitled him to relief. To be precise, the court concluded that Attorney Crisp was ineffective in neglecting to allege that Attorney Muller was ineffective for:

> (1) failing to object to the trial court's refusal and/or denial to instruct the jury on accomplice liability; (2) failing to object to the trial court's refusal and/or denial to instruct the jury on self-defense and voluntary manslaughter; and (3) failing to object to the trial court's instruction on flight as consciousness of guilt.

PCRA Court Opinion, 12/13/22, at 31. Therefore, the PCRA court recommended that this Court grant Appellant a new trial. *Id*.

The following legal tenets guide our review of the PCRA court's findings and conclusions. The standard of review of a PCRA order is whether the PCRA court's determination is supported by the evidence and is free from legal error. ***Commonwealth v. Cruz***, 223 A.3d 274, 277 (Pa.Super. 2019). "We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record." ***Commonwealth v. Mojica***, 242 A.3d 949, 953 (Pa.Super. 2020) (cleaned up). Likewise, "a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." ***Commonwealth v. Robinson***, 82 A.3d 998, 1013 (Pa. 2013).

This Court summarized the law pertinent to the ***Pierce*** test governing claims of ineffective assistance of counsel thusly:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen,

- 10 -

offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa.Super. 2019) (cleaned up).

Here, Appellant presents layered claims of ineffectiveness, asserting that Attorney Crisp was ineffective in failing to pursue claims in these PCRA proceedings that Attorney Muller had been ineffective in representing Appellant at trial and on direct appeal. Therefore, to prevail, Appellant had the burden of establishing each prong of the *Pierce* test as to both attorneys' omissions. *See*, *e.g.*, *Commonwealth v. McGill*, 832 A.2d 1014, 1022-23 (Pa. 2003) (explaining that in a layered claim a court cannot conclude that there is arguable merit to a challenge to subsequent counsel's performance was deficient unless all three prongs of the *Pierce* test are proven as to prior counsel).

With these principles in mind, we turn to the particulars of Appellant's underlying claims. As we find it dispositive, we begin with his contention that Attorneys Muller and Crisp were ineffective in failing to pursue relief based upon the trial court's refusal to instruct the jury as to self-defense and voluntary manslaughter. Pursuant to 18 Pa.C.S. § 505:

> Self-defense is a complete defense to a homicide charge if 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent.

*Commonwealth v. Green*, 273 A.3d 1080, 1084–85 (Pa.Super. 2022) (cleaned up).

While self-defense is a complete justification for a homicide, an actor who held an unreasonable belief as to the danger or need for deadly force is guilty of voluntary manslaughter rather than murder. *See* 18 Pa.C.S. § 2503(b) ("A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable."). However, the other elements of self-defense, namely a lack of fault in provoking or continuing the threat and absence of a violation of a duty to retreat, must be present.

Along these lines, we observe that the law dictates that a duty to retreat exists only if "the retreat was possible with **complete** safety." *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa.Super. 2009) (emphasis added). Similarly, the actor's continuation of a conflict does not defeat justification where he was still responding to the ongoing violence

posed by the aggressor.  ***See***, ***e.g.***, ***Commonwealth v. Serge***, 837 A.2d 1255, 1266 (Pa.Super. 2003), *aff'd on other grounds*, 896 A.2d 1170 (Pa. 2006).

It is well-settled that, "where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record[.]" ***Commonwealth v. Markman***, 916 A.2d 586, 607 (Pa. 2007) (cleaned up).  Instead, "it is for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge." ***Id***. (cleaned up).  Stated differently:  "If there is any evidence from whatever source that will support [the elements of self-defense] then the decision as to whether the claim is a valid one is left to the jury and the jury **must** be charged properly thereon by the trial court." ***Commonwealth v. Mayfield***, 585 A.2d 1069, 1071 (Pa.Super. 1991) (*en banc*) (emphasis added).

The PCRA court, in its thorough opinion, detailed the trial testimony indicating that, on the night in question, Brown overheard Gutierrez call his brother and tell him to bring a gun to the Jazzland Bar, where Brown had become engaged in an altercation with Gutierrez.  This prompted Brown to direct Appellant to retrieve an AK-47 from Brown's vehicle to protect them.  Outside the bar, while Appellant stood near Brown's car with the AK-47, Gutierrez's brother arrived and handed Gutierrez a gun.  Gutierrez cocked the firearm while beginning to walk towards Brown.  Young, one of Appellant's

cohorts, fired a shot upon Gutierrez's approach, after which Appellant and Gutierrez or one of his companions fired their weapons. Discharged cartridge casings from three weapons were recovered from the scene. *See* PCRA Court Opinion, 12/13/23, at 13, 20-21.

Attorney Muller requested that the court instruct the jury on justification and voluntary manslaughter. Not only did the court decline to include that in its charge, but it specifically instructed the jury that, while a killing lacks malice and is thus not murder if the perpetrator acted with legal justification, that scenario was "not involved in this case." *Id*. at 19 (cleaned up).

The PCRA court applied these facts to the *Pierce* test as follows:

> The underlying claim has arguable merit. It is clear from the record that [Appellant] requested the self-defense and voluntary manslaughter jury instructions, and that the trial court refused and/or denied that request. There was sufficient evidence presented through the testimony of Brown, [another witness], and Gutierrez that a jury could find that [Appellant] believed that the shooting was justified. . . . [T]he charge conference was not on the record, and trial counsel did not place any objections on the record following the conference.
>
> There was no rational or strategic reason for counsel's inaction. Attorney Muller candidly admitted that he had no strategic reason to not preserve the issue by placing an objection on the record at the conclusion of the trial court's jury charge. He further stated that he did not raise it on direct appeal because the issue had not been preserved. Attorney Crisp testified that he did not have a strategic reason to not raise the issue in [Appellant]'s initial PCRA petition.[2]

---

2 As the PCRA court observed elsewhere in its opinion: "Attorney Crisp elaborated that he generally did not view jury instructions as a source of PCRA relief and did not review them as thoroughly as he could have in this case." PCRA Court Opinion, 12/13/23, at 15.

> [Appellant] suffered prejudice as a result. If the jury was instructed on self-defense as a justification, as well as voluntary manslaughter, it could have found [Appellant] guilty of a lesser offense than first-degree murder. Additionally, the trial court directed the jury that justification was not involved in this case. Therefore, we find initial PCRA counsel was ineffective, and [Appellant] is entitled to relief on this claim [that PCRA counsel was ineffective in failing to pursue the ineffectiveness of trial and direct appeal counsel].

*Id*. at 21-22.

The Commonwealth contests the PCRA court's conclusions. It argues that the instruction was not warranted because Appellant, by virtue of his association with Brown and/or his menacing appearance, was guilty of provoking the threat. *See* Commonwealth's brief at 20-21. Further, the Commonwealth maintains that Appellant and his group could have retreated by leaving the Jazzland Bar completely after Gutierrez called for a weapon. *Id*. at 21.

Appellant counters that other evidence suggested that he had been playing the role of peacemaker, telling Brown and Gutierrez to calm down, before Gutierrez cocked his gun while approaching and seven shots were discharged before Appellant fired the AK-47. *See* Appellant's brief at 18; Appellant's reply brief at 10. Further, he observes that his decision to arm himself suggested an intent to be prepared to defend an attack from Gutierrez, not necessarily to act as an aggressor. *See* Appellant's brief at 22. Moreover, with Gutierrez calling for a firearm to be brought to him at the bar, and his

brother's prompt delivery of it, calls into question whether a retreat with complete safety was possible at that point.

Accordingly, we agree with the PCRA court that the claim that Attorney Muller was ineffective in failing to preserve the trial court's denial of self-defense and involuntary manslaughter instructions had arguable merit. Additionally, Attorney Muller had no strategic basis for not preserving the issue at trial and pursuing it on direct appeal. Likewise, Attorney Crisp had no reasonable basis for not raising a PCRA claim challenging Attorney Muller's omission.

Finally, the plausibility of the jury concluding that imperfect self-defense negated Appellant's *mens rea* of malice, and instead convicting him of voluntary manslaughter, undermines confidence in the outcome of his trial. **See**, **e.g.**, **Green**, 273 A.3d at 1089) (awarding new trial based upon a refusal to give an imperfect self-defense voluntary manslaughter instruction where, at a party, the appellant brandished his firearm in a dispute with the victim while the victim's cousin approached with his hand near his waistband, the appellant fired a shot in reaction to the victim appearing to commence taking a swing at him, and then turned to fire shots at the cousin as well). Thus, the PCRA court properly ruled that both counsels' omissions prejudiced Appellant. **See Sandusky**, 203 A.3d at 1044.

Therefore, we agree with the PCRA court that he is entitled to PCRA relief in the form of a new trial based upon this claim. As a consequence,

- 16 -

there is no need for us to delve into the merits of the other *Bradley* claims. Moreover, this disposition moots the *Brady* claims that Appellant litigated prior to the appeal, because he now has the information that he claims the Commonwealth failed to produce prior to the first trial, and he may utilize it in the new proceedings.

For the above reasons, we reverse the PCRA court's August 12, 2021 order dismissing Appellant's PCRA petition rather than awarding relief, and remand this case for a new trial.

Order reversed.    Case remanded for a new trial.    Jurisdiction relinquished.

Judge Stabile joins this Memorandum.

Judge Sullivan files a Dissenting Memorandum.


Judgment Entered.


_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/07/2024