J-A29027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICO RODGERS | : | |
| | : | |
| Appellant | : | No. 1052 WDA 2023 |

Appeal from the Judgment of Sentence Entered November 10, 2022
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000537-2021

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                          **FILED: April 14, 2025**

Rico Rodgers ("Rodgers") appeals from the judgment of sentence imposed following his convictions for murder in the third degree, carrying a firearm without a license, and prohibited possession of a firearm.[1]  We affirm.

The facts underlying the instant appeal are as follows.  At approximately 8:45 p.m. on January 23, 2021, City of Aliquippa police officers were dispatched to the 1100 block of Irwin Street, also known as the Plan 12 neighborhood, to investigate reported gunshots.  Sergeant Giovanni Trello ("Sergeant Trello") was the first to arrive and saw Karon Thomas ("the decedent") face down on the street.  Sergeant Trello noticed gunshot wounds and applied pressure until medics arrived.  While tending to the decedent, Sergeant Trello found a gun near his body.  The decedent was transported to a hospital and died shortly after arrival.

_____

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6105(a).

Investigators reviewed video surveillance footage from a nearby business, the Plan 12 Market, which showed the decedent exiting the store shortly before the murder. The video captures a "front seat passenger ... look[ing] at the victim" from a red SUV. N.T., 8/30/22, at 129. The decedent then turned around and stared back at the passenger. *Id*. Investigators obtained surveillance video depicting "three individuals . . . heading to the corner of Irwin Street, where muzzle flashes can be seen, and, right after the muzzle flashes, two of the individuals run back towards the direction they came." Trial Court Opinion, 11/13/23, at 14. Using license plate reader cameras, the police tracked down the owner of the red SUV and subsequently interviewed its driver, Nicole Nadzam ("Nadzam").

Nadzam was not initially forthcoming with the police but eventually provided the following details regarding the incident. Rodgers contacted her earlier that afternoon for a ride. She picked up Rodgers, Isaiah McCoy, Trae Jackson, and Dayon Burrell, with Rodgers sitting in the front passenger seat. The four hung out and smoked marijuana before returning to Aliquippa in the evening to drop off McCoy, after which Rodgers "told [her] to go up" to Plan 12. *Id*. at 18. As they neared the Plan 12 Market, she saw someone walking and "[Rodgers] said, 'who is that?'" *Id*. at 19. Rodgers then instructed her "[t]o go around the corner and park." *Id*. at 20. After doing so, he told her "to turn off [the] lights and shut the car off." *Id*. at 21. Rodgers, Jackson, and Burrell then exited the vehicle and cut through a yard in between some buildings. Shortly thereafter, Nadzam heard approximately eight gunshots.

The three men returned to her vehicle. When Nadzam asked what had happened, Rodgers "said it was none of [her] business," and told her "to drop them off." *Id*. at 24. She heard Rodgers say to one of the occupants, "I think I hit him." *Id*.

Based on Nadzam's statement to police, charges were filed against Rodgers. When police apprehended him, he agreed to give a statement and acknowledged being with Nadzam in the afternoon on the day of the murder. However, Rogers lied to police and claimed that he did not go to Aliquippa that evening. When confronted with the surveillance footage, Rogers eventually admitted that he had shot the decedent, but claimed that he did so in self-defense because the decedent had fired first.

The matter proceeded to a jury trial at which the Commonwealth presented the above testimony. The Commonwealth also called Susan Fennell ("Fennell"), an eyewitness to the shooting, who lived on Irwin Street. Fennell indicated that she was sitting on her porch smoking on the evening of the murder when she observed the decedent "step off the curb" and then "heard a gunshot and that's when he fell to the ground and that's when he pulled out his gun." N.T., 8/31/22, at 7. Ms. Fennell also stated that the decedent had nothing in his hands prior to the first gunshot, and that his hands were not in his pockets. *Id*. at 11. Rodgers testified in his own defense and claimed that he shot the decedent in self-defense after the decedent fired at him. At the

conclusion of trial, the jury found Rogers guilty of murder in the third degree and carrying a firearm without a license.[2]

On November 10, 2022, the trial court sentenced Rogers to an aggregate term of eighteen and one-half to forty years in prison. Rogers filed a timely post-sentence motion on November 21, 2022.[3] Defense counsel sought permission to withdraw in conjunction with the post-sentence motion. The trial court granted the motion to withdraw, and appointed replacement counsel who filed motions for extensions to obtain transcripts, which the trial court granted. Counsel then filed an untimely supplemental post-sentence motion. The trial denied the supplemental post-sentence motion on August 8, 2023, and informed Rodgers that he was entitled to appeal within thirty days. Rodgers filed a notice of appeal within thirty days of that date.[4] Both Rogers and the trial court complied with Pa.R.A.P. 1925.

_____

[2] The matter then proceeded to a non-jury trial on the charge of prohibited possession of a firearm, whereupon the trial court found Rogers guilty due to a prior conviction for aggravated assault.

[3] Post-sentence motions must be filed within ten days after the entry of the judgment of sentence. Pa.R.Crim.P. 720(A)(1). However, when the last day of a time period falls on a weekend, the filing deadline is extended to the next business day. *See* 1 Pa.C.S.A. § 1908. Here, as the tenth day fell on a Sunday, Rogers had until Monday, November 21, 2022, to file his post-sentence motion.

[4] Generally, post-sentence motions must be decided within 120 days. *See* Pa.R.Crim.P. 720(B)(3). The clerk of courts is required to enter an order denying the motion by operation of law if the trial court fails to act within this period. *See* Pa.R.Crim.P. 720(B)(3)(c). Here, the trial court did not rule on the post-sentence motion within this timeframe and instead permitted several
*(Footnote Continued Next Page)*

Rodgers raises the following issues for our review:

a.) Whether the Commonwealth presented sufficient evidence to prove the elements of third degree murder. [Rodgers] contends that the Commonwealth did not present sufficient evidence to disprove beyond any reasonable doubt that [Rodgers] was justified in using deadly force.

b.) Whether the jury's verdict was against the weight of the evidence presented by the Commonwealth at trial.

Rodgers' Brief at 3 (unnecessary capitalization omitted).

Rodgers' first issue challenges the sufficiency of the evidence supporting his murder conviction. A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1152 (Pa. Super. 2020).

When considering a challenge to the sufficiency of the evidence:

[W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved

_____

extensions. Further, the clerk of courts failed to enter an order denying the post-sentence motion by operation of law when the 120-day deadline passed. Finally, the trial court misstated Rogers appellate rights when it informed him that he was entitled to file an appeal within thirty days of its belated ruling on the post-sentence motion. Due to these breakdowns in court operations, we treat the notice of appeal as timely filed. **See Commonwealth v. Khalil**, 806 A.2d 415, 419–20 (Pa. Super. 2002) (treating otherwise untimely notice of appeal as timely filed where the trial court granted unlawful extensions of the post-sentence time periods).

by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*).

Third-degree murder is the killing of another with malice. *See* 18 Pa.C.S.A. § 2502(c). Malice "comprehends not only a particular ill-will, but [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Frye*, 319 A.3d 602, 607 (Pa. Super. 2024) (citation omitted). Pertinently, the element of malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *See Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013).

- 6 -

However, a valid claim of self-defense negates the element of malice applicable to homicide in the third degree. *See Commonwealth v. Gonzales*, 609 A.2d 1368, 1370 (Pa. Super. 1992). Section 505(a) of the Crimes Code provides that "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). Section 505(b)(2), however, restricts the use of "deadly force:"

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily injury, . . . ; nor is it justifiable if:
>
> > (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
> >
> > (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling . . . , unless he was the initial aggressor . . ..

18 Pa.C.S.A. § 505(b)(2)(i)-(ii).

When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. *See Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001). While there is no burden on a defendant to prove the claim before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. *See id*. If there is any evidence that will support

the claim, then the issue is properly before the fact finder. *See id*. Importantly, the finder of fact is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense. *See Commonwealth v. Green*, 273 A.3d 1080, 1088 (Pa. Super. 2022) (citations omitted). "Disbelief of the defendant's testimony, however, is not sufficient to satisfy the Commonwealth's burden to disprove self-defense absent some evidence negating self-defense." *Id*.

Therefore, the Commonwealth sustains its burden of disproving self-defense if it establishes, beyond a reasonable doubt, at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *See Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted). To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. *Id*. at 787-88.

Rogers contends that the Commonwealth failed to meet its burden of proving that he did not act in self-defense. Specifically, Rogers argues that the Commonwealth did not prove beyond a reasonable doubt that he was the aggressor, that he failed in a duty to retreat, or that he used excessive force. Rogers claims that he did not provoke the decedent. Rogers asserts that there

was no trial testimony that he initiated any kind of physical attack upon the decedent. According to Rogers, the only evidence presented against him was that the decedent went from the Plan 12 Market to a residence after exchanging "looks" with Rogers. Rogers' Brief at 12. Rogers argues that the evidence showed that, after exiting the residence, the decedent was on the street armed with his own firearm. Rogers points to his own trial testimony that he did not engage with the decedent until he believed that the decedent had reached for a firearm and he heard a gunshot, at which point Rogers fired multiple times in the direction of the decedent to prevent his own death or serious bodily injury from the decedent firing at him. Rogers asserts that the evidence suggested that the decedent was the aggressor because he was armed and fired at least five shots at Rogers. Rogers claims that he believed that the decedent "lying in wait for [Rogers]." *Id*. at 14.

Rogers maintains that he had no opportunity to retreat because the events occurred so quickly, including the rapid gunfire from the decedent, such that Rogers could not find a way to completely and safely retreat. Lastly, Rogers contends that the Commonwealth failed to establish that his belief that deadly force was necessary under the circumstances was unreasonable or that his use of force against the decedent was excessive. Rogers contends that his use of force was objectively reasonable under the facts and circumstances presented at trial because he had a reasonable belief that he was in fear of death or serious bodily injury after he peered around the corner, saw the

decedent reach for a gun, and immediately thereafter heard a gunshot. Rogers adds that the physical evidence shows that after the first shot from the decedent, there were at least four more shots fired by the decedent.

The trial court considered Rogers' sufficiency challenge and concluded that it lacked merit. The court reasoned:

> In the instant case, the Commonwealth presented evidence that [Rogers] travelled to Aliquippa, to an area he was aware he should not go, and encountered [the decedent] as [Rogers] was driving by. [Rogers], despite admitting that the look [the decedent] gave him made [Rogers] uneasy and caused him to think he might be getting set up, [Rogers] directed the driver of the car he was in to drive around the block and park elsewhere with the lights and engine off. The Commonwealth further presented evidence that [Rogers], with his gun, snuck through a secluded path back towards the location of [the decedent], and stayed behind a corner as he peaked out towards where [the decedent] was previously standing.
>
> Most importantly, the Commonwealth presented testimony from . . . Fennell, an eyewitness to the shooting, that [the decedent] was merely walking from his residence towards the Plan 12 Market when she heard a gunshot, the first gunshot, and she saw the decedent] fall to the ground. Ms. Fennell was emphatic that [the decedent] had nothing in his hands prior to the first shot ringing out, and that his hands were visible (not in his pockets). . . . Fennell testified that it wasn't until [the decedent] fell to the ground that she saw him pull out a gun of his own and return fire.
>
> The significance of this testimony for the self-defense argument is obvious. [Rogers'] entire argument hinges on his claim that the [decedent] shot at [Rogers] first, and [Rogers] only used deadly force in self-defense. However, the testimony of . . . Fennell indicates that [Rogers] shot [the decedent] first, [and that] [Rogers] was the initial aggressor.
>
> * * * *
>
> Given the evidence presented by the Commonwealth, the jury possessed sufficient evidence that the Commonwealth proved

- 10 -

beyond a reasonable doubt that [Rogers] was the initial aggressor provoking any force used against himself and that his claimed belief of being in immediate danger of death or serious bodily injury when he fired the first shot was neither true, nor reasonable.

Further, the evidence—specifically, the video showing [Jackson] and [Burrell] running away once the gunfire started—was sufficient for the jury to have determined beyond a reasonable doubt that [Rogers] knew he could avoid the necessity of using deadly force with complete safety by retreating, but he failed to do so. Therefore, this court finds that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [Rogers'] claim of use of deadly force in self-defense was not justified.

Trial Court Opinion, 11/13/23, at 26-28 (unnecessary capitalization omitted, paragraph formation altered).

Based on our review, we conclude that the Commonwealth presented sufficient evidence to support Rogers' third-degree murder conviction. As explained by the trial court, the Commonwealth presented the testimony of Fennell, who told the jury that, prior to the first shot being fired, the decedent emerged from a nearby residence with nothing in his hands, which were visible and not in his pockets. Fennell further told the jury that it wasn't until the decedent fell to the ground that she saw him pull out a gun of his own and return fire. This testimony alone was sufficient to permit the jury to find beyond a reasonable doubt that Rogers provoked the gunfight by firing the first shot at the decedent. *See Smith*, 97 A.3d at 787 (holding that the Commonwealth sustains its burden of disproving self-defense if it establishes,

beyond a reasonable doubt, *inter alia*, that the accused provoked the use of force).

Moreover, despite Rogers' testimony that he felt uncomfortable after he and the decedent exchanged a "look" and feared that he was being set up, the Commonwealth presented evidence that, rather than directing Nadzam to leave the area, Rogers instead directed her to park around the corner so that he, armed with his own firearm, could leave the vehicle, sneak through a secluded path back towards the location of the decedent, and then engage the decedent. This additional testimony was sufficient to permit the jury to find beyond a reasonable doubt that Rogers had a duty to retreat, and such a retreat was possible with complete safety had Rogers simply directed Nadzam to drive away from the area. ***See id***. (holding that the Commonwealth sustains its burden of disproving self-defense if it establishes, beyond a reasonable doubt, *inter alia*, that the accused had a duty to retreat and the retreat was possible with complete safety). Thus, Rogers' sufficiency challenge lacks merit.

In Rogers' second issue, he claims that the verdict was against the weight of the evidence. As our Supreme Court has explained:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same

facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. *See Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court. *Id*. at 546.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original).

Rogers argues that the weight of the evidence presented does not support a finding of guilt beyond a reasonable doubt to third-degree murder. In advancing this argument, Rogers claims that the "jury disregarded the evidence presented at trial as to [Rodgers'] justifiable actions and misapplied the law to reach its verdict." Rodgers' Brief at 18-19. He additionally asserts that "the jury's misapplication of the law to the facts and evidence presented at trial must shock the conscience of this Honorable Superior Court and warrant a remand for a new trial, or in the alternative warrant a discharge." ***Id***. at 19.

The trial court considered Rogers' weight challenge and concluded that it lacked merit. The court reasoned:

> For an appellant to prevail on a weight of the evidence challenge, he must establish the evidence supporting the conviction is so tenuous, vague, and uncertain that the verdict shocks the conscience of the court.
>
> When the totality of the evidence is considered, the answer to the question of who fired first is not absolutely clear. There is no video clearly showing who fired first. What the [j]ury was faced with was two conflicting eyewitness accounts.
>
> [Rodgers] claimed [the decedent] fired first, and the Commonwealth presented the testimony of Ms. Fennell who stated unequivocally that she saw [the decedent] walking with empty hands, she heard a gunshot and saw [the decedent] fall to the ground, and only after falling to the ground did [he] draw his gun and return fire. . . .

> Under the totality of the evidence and taking into consideration the standard applied in weight of the evidence challenges, this court does not find that [Rodgers] established that the evidence supporting the conviction is so tenuous, vague, and uncertain that the verdict shocks the conscience of the court. Therefore, the court finds that the verdict in this case was not against the weight of the evidence.

Trial Court Opinion, 11/13/23, at 31-32 (unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in denying Rogers' challenge to the weight of the evidence. As explained above, this Court will give the gravest consideration to the findings and reasons advanced by the trial court judge when reviewing its determination as to whether the verdict is against the weight of the evidence. *See Clay*, 64 A.3d at 1055. Moreover, one of the least assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence. *See id*.

Here, Rogers' claim that the verdict was against the weight of the evidence is largely based on his own testimony that the decedent fired the first shot. Rogers essentially asks this Court to reweigh the evidence, and to give *all* weight to his testimony and accord *no* weight to Fennell's testimony that Rogers fired the first shot. This we cannot do, as this Court may not reweigh the evidence. *See Talbert*, 129 A.3d at 545 (holding that the weight to be accorded to the evidence and testimony presented at trial was exclusively for the jury, which was free to believe all, part, or none of the evidence and testimony and to determine credibility).

Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim. In this regard, we discern no abuse of such discretion. The trial court determined that, although the jury was presented with two versions of the events which transpired during the exchange of gunfire, the jury was free to credit Fennell's testimony that Rogers fired first, and to wholly reject as non-credible the testimony provided by Rogers. Thus, as we discern no abuse of discretion by the trial court denying Rogers' weight challenge, Rogers' second issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/14/2025