J-A11025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROGER ERIC WINGERT | : | |
| | : | |
| Appellant | : | No. 1448 MDA 2024 |

Appeal from the PCRA Order Entered October 2, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000854-2021

BEFORE: MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:        **FILED: MAY 9, 2025**

Appellant, Roger Eric Wingert, appeals from the order entered in the Lancaster County Court of Common Pleas, which denied his petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this matter are as follows. Appellant and his wife, Holly Wingert, were in the process of separating due to marital issues and Appellant's methamphetamine addiction.  On the evening of March 13, 2021, Ms. Wingert went out to a bar to celebrate the birthday of her son, Nathaniel Barber.  Ms. Wingert returned home with Mr. Barber, her niece, Kathryn Lesoken, and Mr. Barber's friend, Anthony Brown. Subsequently, an altercation broke out between Appellant and Mr. Barber,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

who attempted to physically attack Appellant. Ms. Wingert and the others separated the men, and Appellant retreated to the attached garage.

In the garage, Ms. Wingert approached Appellant and asked him to leave the house so they could have a peaceful night. Ms. Lesoken and Mr. Brown overheard the argument and went to the garage to check on Ms. Wingert. At that time, a bowl fell and broke, further agitating Appellant, who picked up an electric drill and informed the group that he had everything he needed in the garage to autopsy their bodies or "cut [their] body parts off." (**See** N.T. Trial, 4/13/22, at 64, 92).

Ms. Lesoken put her hand on the drill to stop Appellant from using it. Both Appellant and Ms. Lesoken released the drill, but Appellant picked up a metal baseball bat and started swinging. Although Ms. Wingert, Ms. Lesoken, and Mr. Brown attempted to flee toward the house, Appellant struck Ms. Wingert and Mr. Brown with the bat, resulting in pain and injuries. Ms. Wingert called the police, who arrested Appellant. Police officers discovered methamphetamine and paraphernalia on his person during a search incident to arrest.

On April 13, 2022, the court convened a jury trial. Appellant's testimony differed from the facts as recited above. He testified that Mr. Barber had joined the group confronting him in the garage, that Ms. Lesoken had yelled at him, and that Mr. Barber had acted erratically, swinging from the rafters of the garage ceiling and kicking Appellant's motorcycle. Appellant claimed that Ms. Lesoken smashed the bowl on purpose. Appellant admitted to making

- 2 -

threats to the group, but he claimed that Ms. Lesoken had picked up the drill first.  Appellant admitted to picking up the bat but claimed that he had only done so because there were eight to ten people in the garage, and he felt that they were going to hurt him.  Appellant admitted that Mr. Brown was only looking at Appellant when Appellant hit him with the bat, and that the victims in the garage attempted to flee before he hit them again.  Appellant further admitted to "whacking" the victims.

After the Commonwealth's closing argument, trial counsel requested a self-defense instruction.  The Commonwealth objected because it had already closed without having a fair opportunity to address the claim.  The trial court subsequently denied the request as untimely.

On April 14, 2022, a jury convicted Appellant of three counts of simple assault, two counts of terroristic threats, and one count each of aggravated assault, possession of methamphetamine, and possession of drug paraphernalia.  On July 12, 2022, the trial court sentenced Appellant to an aggregate term of 3 to 9 years' incarceration.  Appellant timely appealed but ultimately discontinued his appeal on January 5, 2023.

On May 30, 2023, Appellant timely filed a *pro se* PCRA petition.  The court appointed counsel, who filed an amended PCRA petition on August 17, 2023, arguing that trial counsel was ineffective for failing to timely request a self-defense instruction.  The PCRA court held an evidentiary hearing on July 11, 2024.  On October 2, 2024, the court formally denied relief.

On October 3, 2024, Appellant timely filed a notice of appeal.  On

October 8, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On October 10, 2024, Appellant timely complied.

Appellant raises a single issue for review:

> Did the PCRA court err by failing to find that trial counsel provided ineffective assistance by failing to make a timely request for a jury instruction on self-defense?

(Appellant's Brief at 4).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). Further, where the PCRA court makes credibility determinations, we are bound by them if they are supported by the record. *Commonwealth v. Mojica*, 242 A.3d 949 (Pa.Super. 2020), *appeal denied*, 666 Pa. 290, 252 A.3d 595 (2021).

Appellant's sole issue on appeal concerns the effective assistance of counsel. Appellant contends that his trial testimony warranted a self-defense instruction. Appellant asserts that his testimony established that he was slapped, kicked, and hit by multiple people in the home, forcing him to retreat

to a garage, where three people followed him and continued to act aggressively towards him. Appellant argues that he only used a baseball bat to defend himself and asserts that although he did not specifically admit to causing any injuries to the victims, that fact alone does not warrant denial of the instruction. Appellant claims that trial counsel was ineffective for not timely requesting the instruction, and that he was prejudiced by the court's denial of the instruction because he lost the opportunity to have the jury consider whether there was a reasonable doubt that his actions were responsive to a provoked attack. Appellant concludes that the court erred in denying his PCRA petition, and this Court must grant relief. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

- 5 -

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting ***Commonwealth v. Geathers***, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." ***Commonwealth v. Kelley***, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting ***Pierce, supra*** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 33, 807 A.2d 872, 883 (2002)).

To succeed on a claim of self-defense, a defendant must show:

> 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly [force] to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat.

*Commonwealth v. Green*, 273 A.3d 1080, 1084-85 (Pa.Super. 2022) (quoting *Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa.Super. 2021)). Further, "before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Id.* at 1085 (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 420 (Pa.Super. 2011)).

A valid claim of self-defense,

> may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak

to [the aforementioned] three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.

*Hansley, supra* at 420-21. "If there is evidence supporting the three elements of self-defense, then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court." *Green supra* at 1085 (internal citations omitted).

Further, the Rules of Criminal Procedure provide, in relevant part:

> **Rule 647. Request for Instructions, Charge to the Jury, and Preliminary Instructions**
>
> \*　　\*　　\*
>
> (B) Any party may submit to the trial judge written requests for instructions to the jury. **Such requests shall be submitted within a reasonable time before the closing arguments**, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.

Pa.R.Crim.P. 647(B) (emphasis added).

Instantly, the PCRA court explained:

> … [Appellant] is not entitled to relief because he has not satisfied elements one and three of the conjunctive ineffective assistance test. The analysis for both elements revolves around the same question: whether, based on the evidence that was before the court, [Appellant] was entitled to an instruction on self-defense. The evidence clearly indicates that [Appellant] was not.
>
> \*　　\*　　\*
>
> Even assuming, *arguendo*, that [Appellant] believed that he

- 8 -

was in danger of imminent unlawful force, the trial record demonstrates that he was not free from fault in provoking or escalating the difficulty that culminated in his use of deadly force and that he used more force than was reasonably necessary. [Ms. Wingert], [Ms. Lesoken], and [Mr. Brown] each testified that it was [Appellant] who escalated the encounter by threatening to cut or autopsy them with a drill. They also testified that as soon as they saw [Appellant] pick up a baseball bat, they immediately moved away from [Appellant] and rushed toward the door that led back to the house. The testimony of the Commonwealth's witnesses made it obvious that [Appellant] was not acting in self-defense.

Even accepting [Appellant's] version of events as true, it remains clear that self-defense was not properly in issue at trial. [Appellant] did not testify that the victims made any threats toward him in the garage or attempted to initiate any physical contact with him. Further, he admitted that when he first stood up to confront the individuals in the garage, everyone backed away from him.

[Appellant] acknowledged that as soon as he grabbed the bat, [Ms. Wingert] started to pull everyone back toward the door of the house. He also testified that [Mr. Brown] was just standing still looking at him when he struck him with the bat. Finally, [Appellant] admitted that everyone in the garage was running away from him, struggling to get out of the garage as he continued swinging the bat. [Appellant] admitted to hitting the victims with the bat multiple times, even as they fled, which is evidenced by the fact that [Mr. Brown] was struck in the back. The evidence is clear that even if [Appellant] feared for his own safety, he provoked, continued, and escalated the confrontation in the garage by introducing a deadly weapon into a verbal argument and by initiating the use of physical force even while his victims ran in the opposite direction.

As explained above, whether a defendant may argue self-defense to the jury is a legal issue that must be determined by the trial judge. Even if trial counsel had requested an instruction, the request would have been denied because the defense was not properly in issue. Therefore, [Appellant's] claim for post-conviction relief is of no

- 9 -

arguable merit and he was not prejudiced by his attorney's failure to request a self-defense instruction prior to closing arguments. Interestingly, trial counsel did not even mention the term "self-defense" in his closing argument, which was given prior to requesting the instruction. For the reasons outlined above, it is clear that self-defense was not a proper justification for [Appellant's] actions.

(PCRA Court Opinion, 11/27/24, at 12-14).

The record supports the court's analysis. All three witnesses testified that Appellant escalated the encounter, uttered threats, was first to pick up the drill, and attacked them while they fled. (**See** N.T. Trial, 4/13/22, at 61-69, 91-95, 104-109). Additionally, although Appellant claimed that he acted in self-defense, his own testimony disproved that assertion, particularly where he admitted to hitting the victims as they fled. (**See** N.T. Trial, 4/14/22, at 162-174). Based on the testimony introduced at trial, Appellant was not entitled to a self-defense instruction: he escalated the situation and ignored his duty to retreat. **See Green, supra**. Despite the fact that the testimony of the victims and Appellant differed, the court's credibility determination—namely, that Appellant's version of events was not credible—was supported by the record. **See Mojica, supra**. Trial counsel cannot be found ineffective for failing to raise a meritless claim. **See Poplawski, supra**. Therefore, the court did not err in denying PCRA relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/9/2025