2022 PA Super 47

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VYANTE ANTON GREEN | : | |
| | : | |
| Appellant | : | No. 372 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 26, 2020
In the Court of Common Pleas of Lehigh County
Criminal Division at No:  CP-39-CR-0005511-2018

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

OPINION BY STABILE, J.:                            **FILED MARCH 16, 2022**

Appellant, Vyante Green, appeals from the judgment of sentence imposed on August 26, 2020 in the Court of Common Pleas of Lehigh County following his conviction of, *inter alia*, first-degree murder (Kenyatta Eutsey), attempted criminal homicide (Dimitri Joseph), and aggravated assault (Dimitri Joseph),[1] all stemming from events that occurred shortly after midnight on January 1, 2018 at a New Year's Eve party.  Appellant contends the trial court erred when it refused to instruct the jury on self-defense and on voluntary manslaughter.  Because we conclude the trial court erred when it denied the voluntary manslaughter ("imperfect self-defense") instruction, we vacate Appellant's judgment of sentence and remand for a new trial.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a), and 2702(a)(1), respectively.

The trial court provided a thorough summary of evidence presented at Appellant's trial, complete with references to and excerpts from the notes of testimony. *See* Trial Court Opinion, 3/26/21, at 2-9. Briefly, Appellant and his victims, Kenyatta Eutsey ("Eutsey") and Dimitri Joseph ("Joseph"), were among the 75 to 100 people who attended a New Year's Eve party at an Airbnb property in Allentown. Appellant had no prior contact with Eutsey or Joseph, who were cousins. All three had been drinking for some time when Eutsey decided he wanted to take someone's phone. He walked up to Appellant, who had a bottle of Hennessey (cognac) in one hand and his phone in the other. Eutsey, who was much larger than Appellant, "snatched" the phone from Appellant and began going through it. When Appellant demanded that Eutsey return the phone, Eutsey began making disparaging remarks about Appellant and said he would not return the phone. In response, Appellant pulled a .32 caliber revolver from his right pocket and demanded his phone. When Eutsey refused and tried to "fake swing or tr[ied] to swing" at Appellant, Appellant fired the revolver. Notes of Testimony ("N.T."), Volume III, at 127, 164-65. As Eutsey was falling to the floor, Appellant fired a second shot.

Appellant then noticed Joseph heading in his direction. He saw Joseph's hand near the waistband of his pants and, rather than "wait to get shot[,] I turned around and started firing at the second individual." *Id.* at 129.

Eutsey died from his wounds. Joseph was severely injured. Appellant fled the scene and made his way to a friend's home and then to an after-hours

establishment.  The following morning, he discarded his clothes and the gun. A few days later, he fled the state to New York where he remained for a week or two.  He was arrested on May 23, 2018.

Following Appellant's February 2020 jury trial, at which he testified, Appellant was found guilty as noted above.  A pre-sentence investigation report was ordered and Appellant proceeded to a sentencing hearing on August 26, 2020.  The trial court imposed a mandatory sentence of life in prison on the first-degree murder conviction and also sentenced Appellant in the standard range to a consecutive term of 20 to 40 years in prison for attempted homicide.

Post-sentence motions were denied on December 1, 2020 after a hearing.  This timely appeal followed.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant asks us to consider three issues, which we have reordered for ease of disposition as follows:

1. Whether Appellant's [issues relating to jury instructions] are preserved for purposes of appellate review despite defense counsel's failure to object at the end of the charge?

2. Whether the trial court erred in making its own credibility determinations and denying Appellant's request for a self-defense instruction and precluding trial counsel from arguing self-defense where [Appellant] explicitly testified that he acted to defend himself from two men who robbed him of his phone, threatened him, tried to punch him, and were potentially armed?

3. Whether the trial court erred in making its own credibility determinations and denying Appellant's request for a voluntary

> manslaughter instruction and precluding trial counsel from arguing imperfect self-defense where [Appellant] explicitly testified that he acted to defend himself from two strangers who robbed him of his phone, threatened him, tried to punch him, and appeared to be armed?

Appellant's Brief at vi.

In his first issue, Appellant contends he preserved his jury instruction claims despite counsel's failure to object on the record at the end of the trial court's charge to the jury. The trial court's Rule 1925(a) opinion is silent as to this matter, suggesting that the trial court recognized the issue was preserved based on statements it made on the record during charging conferences on two consecutive days. The Commonwealth, on the other hand, asserts the claims are waived because counsel did not renew his request for jury instructions or object after the trial court concluded its charge. Commonwealth Brief at 12-14 (citing, *inter alia*, **Commonwealth v. Pressley**, 887 A.2d 220 (Pa. 2005)).

In **Pressley**, defense counsel submitted two proposed points for charge that the trial court rejected on the record prior to closing arguments. The first, a missing evidence charge, was rejected because the documents in question were provided to the defense during discovery. **Id.** at 222. The second, a simple assault charge, was rejected because the defendant had not been charged with simple assault. **Id.** Defense counsel neither took an exception nor lodged an objection at the time of the rulings or following the

charge. *Id.* at 225. In other words, there is no indication that counsel did anything more than merely submit proposed points that the trial court denied.

The Court announced:

We hold that under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

*Id.*

We acknowledge that Appellant's counsel did not object to the charge or request any supplemental instructions when asked by the trial court at the conclusion of its charge to the jury. However, counsel did not merely submit proposed points for charge that were denied by the trial court, as was the case in *Pressley*. Rather, on two separate days, counsel argued for self-defense and voluntary manslaughter charges. The record clearly reflects "the trial court's ruling respecting the points," *id.* at 225, when it rejected counsel's request for those instructions and assured counsel on both days that the issues were preserved for appeal. *See* N.T, Vol. III, at 196; Vol. IV at 18. Under the circumstances, while renewing his objections to the twice-rejected points for charge at the end of the jury charge would have eliminated the need for this Court to address the claim of waiver, we do not find that preserving his objections on the record during the charging conferences, rather than at the end of the jury charge, where the trial court expressly informs counsel his

objections were preserved, runs afoul of **Pressley** or Rule 647(B).[2] Therefore, we decline to find Appellant's issues waived.

With regard to Appellant's challenges to the denial of jury instructions, we initially note:

> Our standard of review in regard to a trial court's decisions on jury instructions is well-settled: "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Galvin**, 603 Pa. 625, 651, 985 A.2d 783, [798-99] (2009).

**Commonwealth v. Cannavo**, 199 A.3d 1282, 1286 (Pa. Super. 2018), *appeal denied*, 217 A.3d 180 (Pa. 2019). Further, "[t]the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." **Commonwealth v. Sandusky**, 77 A.3d 663,

---

[2] It appears the Supreme Court has recognized that a jury instruction issue can be preserved not only at the conclusion of a jury charge but also during a charging conference. In **Commonwealth v. Sanchez**, 82 A.3d 943 (Pa. 2013), decided eight years after **Pressley**, the appellant raised a jury instruction issue. The Commonwealth argued the issue was waived "because the record does not indicate that any request for a voluntary manslaughter instruction was made, or that a specific and timely objection was made to the court's denial of such instruction." **Sanchez**, 82 A.3d at 978. The Court noted that the "Commonwealth's suggestion of waiver with respect to this claim of error is clouded by the fact that the charging conference between the court and counsel was not transcribed." **Id.** However, the trial court disposed of the jury instruction issue in its supplemental Rule 1925(a) opinion. The Supreme Court interpreted the trial court's disposition of the issue as evidence "that the issue had been properly preserved during the conference." **Sanchez**, 82 A.3d at 978-79. **See also Commonwealth v. Sandusky**, 77 A.3d 663 (Pa. Super. 2013).

667 (Pa. Super. 2013) (quoting **Commonwealth v. Thomas**, 904 A.2d 964, 970 (Pa. Super. 2006) (citation omitted)).

In the first of his two claims relating to jury instructions, Appellant contends the trial court erred when it refused to instruct the jury on self-defense. As this Court recently reiterated:

> Self-defense is a complete defense to a homicide charge if 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly [force] to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat. 18 Pa.C.S. § 505(b)(2); **Commonwealth v. Sepulveda**, 618 Pa. 262, 55 A.3d 1108, 1124 (2012); **Commonwealth v. Mouzon**, 617 Pa. 527, 53 A.3d 738, 740 (2012); [**Commonwealth v. Knox**, 219 A.3d 186, 196 (Pa. Super. 2019)]. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent. **Sepulveda**, 55 A.3d at 1124; **Knox**, 219 A.3d at 196; **Patterson**, 180 A.3d [1217, 1231 (Pa. Super. 2018)].

**Commonwealth v. Jones**, ---A.3d---, ---, 2021 WL 5964729, at *4 (Pa. Super. December 16, 2021).

As the Commonwealth correctly recognizes, "Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." Commonwealth Brief at 15 (quoting **Commonwealth v. Hansley**, 24 A.3d 410, 420 (Pa. Super. 2011)). In **Hansley**, this Court explained that a valid claim of self defense

> may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or

conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.

Thus, as provided by statute and as interpreted through our case law, to establish the defense of self-defense it must be shown that[:] a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, **and that there was a necessity to use such force in order to save himself therefrom;** and c) the slayer did not violate any duty to retreat or to avoid the danger.

If there is any evidence from whatever source that will support **these three elements** then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court.

*Id.* at 420-21 (quoting **Commonwealth v. Mayfield**, 585 A.2d 1069, 1070-71 (Pa. Super. 1991) (*en banc*) (cleaned up) (emphasis in original)).

The trial court refused to instruct the jury on self-defense.[3] The court recognized that a claim of self-defense requires that the evidence establish three elements, specifically, that a defendant

(a) Reasonably believed that he was in **imminent danger of death or serious bodily injury**, and that it was necessary to use deadly force against the victim to prevent such harm; (b) was free from fault in provoking the difficulty which culminated in the slaying; and (c) did not violate any duty to retreat.

_____

[3] The trial court uses the term "self-defense" as well as the term "justification." We note that these are not two different defenses. Justification is the term employed for self-defense in the Crimes Code. **Commonwealth v. Mouzon**, 53 A.3d 738, 740 (Pa. 2012). We shall refer to the defense as "self-defense."

Trial Court Opinion, 3/26/21, at 11 (citing **Sanchez**, 82 A.3d at 980) (in turn citing **Sepulveda**, 55 A.3d at 1124) (emphasis in original). As indicated above, if there is evidence supporting the three elements, "then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court." **Hansley**, 24 A.3d at 421.[4]

Here, Appellant claimed that when Eutsey snatched the phone from his hand, Appellant told Eutsey to give the phone back. N.T., Vol. III, at 120-21. In response, Eutsey began making disparaging remarks and asked Appellant what he was going to do about it. **Id.** Appellant testified that Eutsey glanced across the room. Appellant followed Eutsey's glance and saw Joseph who started walking with "his hand somewhere in his waistband area." **Id.** at 122. Joseph "stopped where he was at. So then that's when [Eutsey] came back to me and started saying different things . . . like, 'you still beat, like, you ain't going to get your phone back.' And at the time, that's when I displayed my firearm." **Id.** at 123. He pointed the gun toward Eutsey and "[t]hat's

_____

[4] Regarding the second and third elements necessary to warrant a self-defense charge, there was no suggestion that Appellant was at fault in provoking the difficulty (second element). **See** N.T., IV, at 6 (unnumbered) (Counsel: "[With r]espect to being free from fault, the testimony in the Commonwealth's . . . ." The court: "Let's push that one aside, because I don't think that really is what defeats your request here.") Further, although there was testimony suggesting otherwise, Appellant testified that he was in a corner and unable to retreat (third element). **See** N.T., Vol. III, at 126, 129.

when I told him, all right, now give me my phone to try to, like, scare him to get my phone back." *Id.* at 124.

According to Appellant, Eutsey asked Appellant, "Basically, what the fuck you going to do with that, pussy." *Id.* Eutsey then looked back in the direction of Joseph and Appellant "guess[ed Joseph] could see that I pulled out a firearm already, because he was, like, hesitant of what he wanted to do and how he was going to go about it." *Id.* at 125. Joseph's "hands were still down. So in my mind, I'm just trying to figure out what's going on. And by the time I went to go look back at them, I just seen what [] looked like [Eutsey] trying to, like, swing on me[.]" *Id.* Appellant explained that Eutsey's "body went into a twisted formation like he was going to try to, like, sucker punch me basically." *Id.* at 126. "Once he tried to fake swing or try to swing, that's when I ended up weaving when the swing came, and that's when I ended up firing the first shot." *Id.* at 127. "When the swing came, I just leaned back. The firearm was still pointed at the individual. It was just a quick reaction, and it just discharged." *Id.* at 128.[5] Appellant said he then "shot again, too." *Id.* At that point, he saw Joseph heading in his direction. Joseph's hand "was covered up" so Appellant "didn't know if he was trying to pull a firearm out or not. At the time, I wasn't trying to wait to get shot. I turned around and started firing at [Joseph]." *Id.* at 128-29.

---

[5] Although Appellant stated the firearm "just discharged," he acknowledged he pulled the trigger. *Id.*

The trial court determined that Appellant used deadly force

> where, under any interpretation of the circumstances, the appellant only faced non-deadly force. When asked why he pulled the trigger, his response was that he "perceived" threats. He saw no gun, he eluded any attempt by Mr. Eutsey to strike him, and made it clear that Mr. Eutsey died because he would not return appellant's cell phone. The appellant used greater force than was necessary to protect himself from death or serious bodily injury. He used "unreasonable force, rendering the claim of self-defense unavailable."

Trial Court Opinion, 3/26/21, at 13 (citing **Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012)). Moreover, Appellant "did not act out of an honest, bona fide belief that he was in imminent danger of death or serious bodily injury. Furthermore, [A]ppellant's belief that he needed to defend himself with deadly force when faced with an unarmed man was unreasonable in light of the facts as they appeared to him." **Id.** at 13 (citing **Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014)). "[A]ppellant shot and killed Mr. Eutsey and seriously wounded Mr. Joseph, not because he reasonably believed he was in danger of death or serious bodily injury, but because Mr. Eutsey would not return his cell phone." **Id.** at 14.

The trial court concluded the evidence did not establish that Appellant **reasonably** believed he was in imminent danger of death or serious bodily injury, one of the three elements required to establish self-defense.[6]

_____

[6] As our Supreme Court explained in **Commonwealth v. Mouzon**, 53 A.3d 738 (Pa. 2012):

*(Footnote Continued Next Page)*

- 11 -

Cognizant that the trial judge is to determine whether a valid claim of self-defense has been made out as a matter of law, *see Hansley*, 24 A.3d at 420, and mindful that our standard of review of a trial court's denial of a jury instruction is one of deference, we find no error or abuse of discretion in the trial court's refusal to deliver a self-defense instruction. Appellant is not entitled to relief on his second issue.

In his third issue, Appellant argues the trial court erred when it refused to give the voluntary manslaughter or "imperfect self-defense" instruction.[7] Under 18 Pa.C.S.A. § 2503(b), voluntary manslaughter is defined as:

_____

> The requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant "must have acted out of an honest, bona fide belief that he was in imminent danger," which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Id.* at 752 (citing *Commonwealth v. Light*, 326 A.2d 288 (Pa. 1974)).

[7] Appellant largely relies on *Commonwealth v. Monroe*, 322 A.2d 100 (Pa. 1974), in support of his assertion of trial court error for failing to deliver a voluntary manslaughter charge. *See* Appellant's Brief at 11-13. During the charging conference, the trial court noted that when *Monroe* was decided, trial courts were required to provide a voluntary manslaughter charge. *See* N.T., Vol. IV, at 17. Our Supreme Court "has repeatedly held since 1983 that a murder defendant is entitled to a jury instruction on the lesser offense of voluntary manslaughter only where there is sufficient evidence to support such a verdict." *Commonwealth v. Cook*, 952 A.2d 594, 637 (Pa. 2008) (citing *Commonwealth v. Ragan*, 743 A.2d 390, 396 (Pa. 1999) (citing, *inter alia, Commonwealth v. Carter*, 466 A.2d 1328, 1322-33 (Pa. 1983) ("'unreasonable belief' manslaughter charge shall be given
*(Footnote Continued Next Page)*

> **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b).  In **Sanchez**, our Supreme Court reiterated that

> "unreasonable belief voluntary manslaughter," sometimes loosely referred to as "imperfect self-defense," **Commonwealth v. Tilley**, 595 A.2d 575, 582 (Pa. 1991) (citing 18 Pa.C.S. § 2503(b)), will only justify a voluntary manslaughter instruction in limited circumstances: where a defendant held "an unreasonable rather than a reasonable belief that deadly force was required to save his or her life," and "all other principles of justification under 18 Pa.C.S. § 505 have been met."  **Id.** Generally, the use of deadly force is not justifiable "unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat."  18 Pa.C.S. § 505(b)(2).  Although a defendant has no burden to prove a claim of self-defense before such a defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1124 n. 13 (Pa. 2012).

**Sanchez**, 82 A.3d at 980 (cleaned up).[8]  In **Light**, our Supreme Court

reiterated:

---

only when requested, where the offense has been made an issue in the case, and the trial evidence reasonably would support such a verdict."). Therefore, even though defendants no longer have an unconditional right to the unreasonable belief voluntary manslaughter charge post-**Carter**, it remains true that a defendant is entitled to the instruction when requested, if there is sufficient evidence to support the verdict.

[8] We note that a voluntary manslaughter jury charge is not required if a defendant denies having committed the killing.  **Id.** at 98 (citing **Commonwealth v. White**, 275 A.2d 75, 77 (1971)).  However, here
*(Footnote Continued Next Page)*

The dividing line between self-defense and this character of manslaughter (voluntary, brought about through the influence of a passion of fear) seems to be the existence, as the moving force, of a reasonably founded belief of either imminent peril to life or great bodily harm, as distinguished from the influence of an uncontrollable fear or terror, conceivable as existing but not reasonably justified by the circumstances.

*Light*, 326 A.2d at 294 (quoting *Commonwealth v. Principatti*, 104 A. 53, 57 (Pa. 1918) (additional citation omitted)).  Further,

[i]f the circumstances are both adequate to raise and sufficient to justify a belief in the necessity to take life in order to save one's self from such danger, where the belief exists and is acted upon, the homicide is excusable upon the theory of self-defense; . . . while, if the act is committed under the influence of an uncontrollable fear of death or great bodily harm, caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense, the killing is manslaughter.

*Principatti*, 104 A. at 57 (citation omitted).

As reflected above, in *Jones*, this Court discussed the three elements of self-defense and explained the Commonwealth's burden of disproving at least one of those elements.  In terms of Appellant's requested self-defense claim, the trial court determined that the element the Commonwealth disproved was that Appellant "reasonably" believed he was in imminent danger of death or serious bodily injury so as to necessitate the use of deadly

---

Appellant admitted that he pulled the trigger and shot Eutsey twice.  N.T., Vol. III, at 128.  He also admitted shooting Joseph.  *Id.* at 128-29.

force. However, the Court in **Jones** also addressed imperfect self-defense, noting:

> If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense. 18 Pa.C.S. § 2503(b); **Sepulveda**, 55 A.3d at 1124; **Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*).
>
> The finder of fact is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense. **Commonwealth v. Houser**, 610 Pa. 264, 18 A.3d 1128, 1135 (2011); **Commonwealth v. Carbone**, 524 Pa. 551, 574 A.2d 584, 589 (1990); **Commonwealth v. Chine**, 40 A.3d 1239, 1243 (Pa. Super. 2012). Disbelief of the defendant's testimony, however, is not sufficient to satisfy the Commonwealth's burden to disprove self-defense absent some evidence negating self-defense. **Commonwealth v. Torres**, 564 Pa. 219, 766 A.2d 342, 345 (2001); **Commonwealth v. Ward**, 188 A.3d 1301, 1304 (Pa. Super. 2018).

**Jones**, ---A.3d ----, ---, 2021 WL 5964729, at *4.

Here, Appellant testified that Eutsey—who at 6' 3-1/2" and 234 pounds, **see** N.T., Vol. III, at 167, was larger than Appellant, **id.** at 120—tried to swing at Appellant, who was scared. **Id.** at 127, 131. In response, Appellant fired twice. Both shots were estimated to have been from a distance of less than one foot away, and perhaps less than ten inches away. **Id.** at 166. Appellant then saw Joseph coming toward him and "felt he was trying to pull something from his waistband." **Id.** at 174. Appellant shot at Joseph, rather than "wait

to get shot," *id.* at 129, in response to what he perceived as threats. *Id.* at 174. In other words, Appellant testified as to his subjective beliefs.

As the trial court correctly recognized, "Imperfect self-defense has two components: the defendant's subjectively held belief of danger posed by the victim and the objective measurement of that belief. Trial Court Opinion, 3/26/21, at 12. Further, "[a] <u>viable</u> claim of imperfect self-defense cannot be based solely on the subjective state of mind of the defendant. 'It is not the appellant who determines what is a reasonable belief. There must be some standard by which it is measured.'" *Id.* (quoting *Sepulveda*, 55 A.3d at 1126) (emphasis in original).

Our review of the evidence does not reflect that the Commonwealth **disproved** Appellant genuinely believed he was in imminent danger of being killed or seriously injured by Eutsey or by Joseph. If anything, through its cross-examination of Appellant, the Commonwealth bolstered Appellant's contention that he "actually, but unreasonably believed deadly force was necessary." *Truong*, 36 A.3d at 599. Nevertheless, the jury was not instructed on voluntary manslaughter or imperfect self-defense and, therefore, could not consider whether Appellant's belief was reasonable or unreasonable. We conclude that the jury, as factfinder—not the trial court— should have determined whether Appellant unreasonably believed that deadly force was necessary. We agree with Appellant that the trial court usurped the jury's role as factfinder by making its own credibility determinations when it

denied Appellant's request for a voluntary manslaughter instruction and precluded counsel from arguing imperfect self-defense.

Based on the evidence presented at trial, an "unreasonable belief" voluntary manslaughter jury instruction was appropriate and the trial court's refusal to provide that instruction prejudiced Appellant. Therefore, the refusal to instruct on voluntary manslaughter constitutes reversible error. *Sandusky*, 77 A.3d at 667.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2022