J-A18028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PHILIP J. VONVILLE | : | |
| | : | |
| Appellant | : | No. 1633 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 8, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001708-2009

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED SEPTEMBER 22, 2025**

Philip J. Vonville ("Vonville") appeals from the judgment of sentence entered by the Monroe County Court of Common Pleas ("trial court") after a jury convicted him of third-degree murder. This was the fourth jury trial convened in this matter. On appeal, Vonville argues that the trial court lacked jurisdiction to hold the third trial, and further raises several challenges to the court's jury instructions and an evidentiary claim. Because we find no merit to Vonville's claims, we affirm.

**Facts and Procedural History**

On September 19, 2009, Vonville fatally stabbed Christopher Hernandez ("Hernandez"). Vonville does not deny killing Hernandez, but asserts that he acted in self-defense. The trial court summarized the facts surrounding Hernandez's murder as follows:

At the time of the killing, [Vonville] was living with his fiancée, Brittany Hartley [("Hartley")], and her parents in her parents' home. [Vonville] met [Hartley] in 2007 when he was 27 and she was a 17-year-old high school junior. [Vonville] moved in at the end of that year and the couple were engaged in 2009 in [Hartley]'s senior year.

[Hartley]'s post-graduation plan was to join the army. She was scheduled to leave for basic training two days after the day [Hernandez] was killed. As [Hartley] graduated and the time to leave for boot camp neared, … the relationship between she and [Vonville] became strained.

Two nights before the killing, [Vonville] and [Hartley] had an argument. [Hartley] left and went to stay with [Hernandez], an old friend from school who at the time lived in New York State.

At that time, [Vonville] and [Hernandez] had not met. While [Hartley] was in New York, [Vonville] and [Hernandez] exchanged texts and spoke on the phone. …

[Vonville] testified that during the phone call[, Hernandez] said that he would kill [Vonville], shoot him, if [Vonville] did not stay away from [Hartley]. …

[Hartley] returned to Pennsylvania the next day. That night—the night before the killing—she attended a party her friends were giving her before she left for the Army. [Hernandez] was invited and attended the party. [Vonville] did not attend. He was at work. During the party, there was additional communication between [Vonville] and [Hernandez].

Later, [Hernandez] drove [Hartley] to her parents' home so that she could retrieve some personal belongings. [Vonville] returned home from work. At that time, [Hartley] and [Hernandez] were in the bedroom. During this first meeting between the two men, each had the opportunity to size-up the other. [Vonville] observed that [Herandez] was much smaller than [he], who was at the time into weightlifting and martial arts. While the situation was awkward, there were no fights, problems, or issues. In fact, the two men shook hands before [Hernandez] and [Hartley] left.

The next day—the day of the killing—[Vonville] packed some items and started burning personal effects in a burning barrel outside the home in which he was living. [Vonville] had with him knives that he frequently carried.

\* \* \*

[Hartley]'s mother called [Hartley and asked her to come home to deal with Vonville who was acting in a bizarre manner. After Hartley arrived home, she and Vonville were talking outside]. [Vonville] saw [Hernandez], who had arrived at the property, but was seated in his truck some distance away.

According to [Vonville], Hernandez smiled or "cackled" at him and reached for something in the truck. [Hartley] did not see this.

At that point, [Vonville] ran to the truck, with his knife raised and [Hartley] yelling at him to stop, and stabbed [Hernandez] through the driver's side window. [Hernandez] yelled, "you're crazy." [Vonville] responded, "yes I am." When [Hernandez] tried to get away by moving to the passenger side, [Vonville] ran around the truck, smashed the passenger window, and stabbed him again. [Vonville] then jumped into the back of the truck, jockeying for another attack, although he did not stab him again.

After the incident was over and [Hartley] was attending to [Hernandez], [Vonville] attempted suicide by stabbing himself and was taken to the hospital. [Hernandez died from his injuries.]

\* \* \*

No firearms or weapons were found in [Hernandez's] truck. The closest thing to a weapon that was recovered was a small pry bar found on the ground near the truck.

Trial Court Opinion, 2/14/2025, at 32-35.

Vonville was arrested and charged with criminal homicide. Vonville

proceeded to a jury trial in which he did not testify. In its charge to the jury,

the trial court improperly instructed the jury, "You may infer any inference of

guilt from the fact that he did not testify in his own defense." ***Vonville v. Kerestes***, No. 3:14-CV-1582, 2019 WL 1040747, at \*4 (M.D. Pa. Mar. 5, 2019) (unpublished decision). On July 13, 2020, a jury convicted Vonville of third-degree murder, and the trial court subsequently sentenced him to twenty to forty years in prison. After unsuccessful state-court appellate and post-conviction proceedings, Vonville filed a habeas petition in the United States District Court for the Middle District of Pennsylvania. On March 5, 2019, the federal court granted Vonville relief after it found that "trial counsel was ineffective for failing to object to the unconstitutional jury instruction." ***Id.*** at \*13.

In February 2020, the Commonwealth retried Vonville, but it resulted in a mistrial because of juror misconduct. ***See Commonwealth v. Vonville***, 873 EDA 2021, 908 EDA 2021, 2022 WL 730575, at \*4 (Pa. Super. Mar. 11, 2022) (non-precedential opinion). The trial court scheduled a third trial. ***See id.***

Before the convening of the third trial, on March 1, 2021, Vonville filed a pro se motion for dismissal on double jeopardy grounds ("First Double Jeopardy Motion").[1] The trial court denied the motion but expressly concluded that that one of Vonville's double jeopardy claims was not frivolous. ***See id.*** Vonville timely appealed the denial of his First Double Jeopardy Motion, and

---

[1] The trial court had previously granted Vonville's request to proceed pro se.

on March 11, 2022, this Court affirmed. *See id.* at \*10; *see also* Pa.R.Crim.P. 587(b)(6) ("If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order."). Vonville filed a petition for allowance of appeal to the Supreme Court of Pennsylvania.

On June 13, 2022, while his petition for allowance of appeal was pending before our Supreme Court, Vonville filed a motion to dismiss based on double jeopardy ("Second Double Jeopardy Motion"). The trial court subsequently denied this motion without a hearing and Vonville did not appeal. On November 1, 2022, our Supreme Court denied his petition for allowance of appeal regarding his First Double Jeopardy Motion. ***Commonwealth v. Vonville***, 287 A.3d 455 (Pa. 2022).

On December 27, 2022, Vonville filed a third motion to dismiss on double jeopardy grounds ("Third Double Jeopardy Motion"). On January 20, 2023, the trial court denied the motion, but did not state whether the motion was frivolous. *See* Trial Court Order, 1/20/2023. That same day, Vonville timely appealed the denial of his Third Double Jeopardy Motion.

On January 26, 2023, however, Vonville advised the trial court that he had filed a petition for writ of certiorari regarding his First Double Jeopardy Motion to the United States Supreme Court. Nevertheless, on January 31, 2023, after Vonville had already filed a notice of appeal from the denial of his Third Double Jeopardy Motion, the trial court amended its order denying that

- 5 -

motion to state that the Third Double Jeopardy Motion was "frivolous" because the claims "were previously litigated, or could have been litigated" before the trial court or the Superior Court of Pennsylvania. Trial Court Order, 1/31/2023, ¶ 6. Thereafter, Vonville petitioned this Court for permission to allow an interlocutory appeal for review of the amended order finding that his Third Double Jeopardy Motion was frivolous. *See* Pa.R.A.P. 1311(a)(3). This Court granted Vonville's petition. *See Commonwealth v. Vonville*, 245 EDA 2023, 2023 WL 8051610, at *2 (Pa. Super. Nov. 20, 2023) (non-precedential decision).

On April 3, 2023, the United States Supreme Court denied Vonville's petition for writ of certiorari regarding his First Double Jeopardy Motion. *Vonville v. Pennsylvania*, 143 S. Ct. 1088 (2023). The trial court subsequently scheduled Vonville's fourth trial for October 2023. On October 13, 2023, following a four-day trial, a jury convicted Vonville of third-degree murder.

On November 20, 2023, following Vonville's third trial, this Court issued its decision affirming the denial of Vonville's Third Double Jeopardy Motion. *Vonville*, 2023 WL 8051610, at *3. On December 19, 2023, Vonville filed a petition for allowance of appeal to our Supreme Court.

While the allocatur petition was pending, on January 8, 2024, the trial court sentenced Vonville to twenty to forty years in prison. Vonville filed timely post-sentence motions, which the trial court denied. On June 7, 2024,

Vonville timely appealed his judgment of sentence to this Court. On June 27, 2024, the trial court granted Vonville's request for the appointment of counsel to represent him for this appeal.

On September 10, 2024, our Supreme Court denied Vonville's petition for allowance of appeal regarding his Third Double Jeopardy Motion. *Commonwealth v. Vonville*, 326 A.3d 88 (Pa. 2024). The record reflects that he did not pursue any further appeal of his Third Double Jeopardy Motion with the United States Supreme Court.

In the instant appeal, both Vonville and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. Vonville presents the following issues for review:

> 1. Whether the trial court erred in proceeding to trial in that it lost jurisdiction to do so[?] An appeal was pending before the Pennsylvania Superior Court on the [third] double jeopardy denial and the trial court's finding of "frivolous" was determined to be null and void by the Superior Court. The Superior Court's jurisdiction was "secure." *See* [*Vonville*, 2023 WL 8051610]; *see also*, Pa.R.A.P. 311(a)(6), Pa.R.Crim.P. 587(b)(6), 42 Pa.C.S.[] § 742, and Pa.R.A.P. 1701(a).

> 2. Whether the trial court erred in not instructing the jury on self-defense and justification when there was evidence presented to support the self-defense claim to be properly before the jury as the fact-finder, including the prior threatening phone call and text messages toward [Vonville] from [Hernandez] as testified by [Vonville], [Hernandez] arrived at [Vonville]'s residence after [Hartley] appeared in separate vehicles, pry bar found at the scene belonging to [Hernandez], and [Vonville] saw [Hernandez] reaching for something that could have been a weapon while inside his vehicle[?]

> 3. Whether the trial court erred in not permitting [Vonville] to call Dr. [Richard] Fischbein as an expert witness with

- 7 -

respect to [his] self-defense claim and to negate the mens rea of malice with his PTSD, as relevant and probative to aid the jury in evaluating [Vonville]'s behavior and state of mind given his abusive environmental past growing up[?]

4. Whether the trial court erred by instructing the jury on consciousness of guilt as a result of [Vonville] stabbing himself in a suicide attempt when [Vonville] was already suicidal before [Hernandez] appeared at the scene, and the Commonwealth conceded the jury instruction was not applicable on the record[?]

Vonville's Brief at 3-5 (unnecessary capitalization omitted).

## Jurisdictional Challenge

In his first issue, Vonville argues that the trial court lacked jurisdiction to conduct his latest retrial because the appeal of the denial of his Third Double Jeopardy motion was still pending before this Court. *Id.* at 27-29. Vonville asserts that under Pennsylvania Rule of Appellate Procedure 1701, once he filed his appeal from his Third Double Jeopardy Motion, it divested the trial court of jurisdiction over his case. *Id.* at 28. He contends that because this Court held that the trial court's amended order finding his Third Double Jeopardy motion frivolous was null and void, that this Court determined that its jurisdiction over the appeal of his Third Double Jeopardy Motion was secure, and that, consequently, the trial court should not have proceeded to trial. *Id.* at 27-29.

"Jurisdiction is purely a question of law; the appellate standard of review is de novo, and the scope of review plenary." ***Commonwealth v. Cross***, 317 A.3d 655, 657 (Pa. Super. 2024) (citation omitted). "As a general rule, subject to some exceptions …, appellate courts have jurisdiction only over

appeals taken from a final order." ***Commonwealth v. Scarborough***, 64 A.3d 602, 608 (Pa. 2013). A final order "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1). Typically, therefore, a criminal defendant "may appeal only from a final judgment of sentence, and an appeal from any prior order or judgment will be quashed." ***Cross***, 317 A.3d at 657 (citation omitted). Appeals may also be taken from "an interlocutory order as of right; [] an interlocutory order by permission; or [] a collateral order." ***Commonwealth v. Parker***, 173 A.3d 294, 296 (Pa. Super. 2017) (citation omitted).

The denial of a double jeopardy motion is considered a collateral order. Pennsylvania Rule of Criminal Procedure 587(b) sets forth the procedures for deciding and appealing double jeopardy motions:

(1) A motion to dismiss on double jeopardy grounds shall state specifically and with particularity the basis for the claim of double jeopardy and the facts that support the claim.

(2) A hearing on the motion shall be scheduled in accordance with Rule 577 (Procedures Following Filing of Motion). The hearing shall be conducted on the record in open court.

(3) At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law and shall issue an order granting or denying the motion.

(4) In a case in which the judge denies the motion, the findings of fact shall include a specific finding as to frivolousness.

(5) If the judge makes a finding that the motion is frivolous, the judge shall advise the defendant on the record that a defendant has a right to file a petition for review of that determination

- 9 -

> pursuant to Pa.R.A.P. 1311(a)(3)[2] within 30 days of the order denying the motion.
>
> (6) If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order.

Pa.R.Crim.P. 587(b).

The reasoning underlying this rule is that to permit interlocutory appeals of frivolous double jeopardy motions "would only serve to delay prosecution[,]" as permitting automatic stays resulting from the filing of an appeal of a frivolous double jeopardy motion would "encourage[] the use of frivolous appeals as a means of avoiding prosecution." ***Commonwealth v. Orie***, 22 A.3d 1021, 1025 (Pa. 2011). Where, however, the trial court fails to make a finding one way or the other as to whether the double jeopardy motion is frivolous, this Court has held that it constitutes "a collateral order under [Pennsylvania Rule of Appellate Procedure 313][3] an[d] immediately appealable." ***Commonwealth v. Gross***, 232 A.3d 819, 833 (Pa. Super. 2020) (en banc).

Regarding a court's jurisdiction following the filing of appeal, "[e]xcept as otherwise prescribed by these rules, after an appeal is taken or review of

_____

[2] "An appeal may be taken by permission from an interlocutory order … that determined that a defendant's motion to dismiss on the basis of double jeopardy is frivolous." Pa.R.A.P. 1311(a)(3).

[3] "An appeal may be taken as of right from a collateral order of a trial court or other government unit." Pa.R.A.P. 313(a).

- 10 -

a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a). Thus, under Rule 1701(a), "[o]nce an appeal is filed, a trial court has no jurisdiction to proceed further in the matter, absent limited exceptions[.]" *Commonwealth v. Smith*, 244 A.3d 13, 17 (Pa. Super. 2020).

Importantly, this Court has stated that "[a]ny act taken by a court without proper jurisdiction is null and void."[4] *Commonwealth v. Harris*, 230 A.3d 1124, 1127 (Pa. Super. 2020) (citation omitted). In *Harris*, we explained that following an appeal, "a trial court has no jurisdiction over a case until an appellate court returns the record to it with instructions for the trial court to proceed. Otherwise, … the trial court risks following an appellate decision that may not ultimately be the final law of the case." *Id.* Even after this Court issues a decision, an appellant still possesses "the right to seek panel reconsideration, en banc reargument, and/or review by the Supreme Court of Pennsylvania and ultimately the Supreme Court of the United States." *Id.*

The record reflects that Vonville appealed from the denial of his First Double Jeopardy Motion on April 9, 2021. Pursuant to Rule 1701(a), with limited exceptions not applicable here, the trial court could take no additional action on Vonville's case until the appeal of his First Double Jeopardy Motion

_____

[4] An order that is legally null is "of no legal effect." *Commonwealth v. Walton*, 472 A.2d 615, 617 (Pa. Super. 1983).

- 11 -

concluded. *See* Pa.R.A.P. 1701. Despite having filed this appeal, Vonville continued to file serial motions and petitions, and the trial court continued to rule on them, even though his appeal of the First Double Jeopardy Motion continued from our Court to the Supreme Court of Pennsylvania, and finally to the United States Supreme Court. Indeed, the United States Supreme Court did not deny Vonville's petition for writ of certiorari regarding his First Double Jeopardy Motion until April 3, 2023. Prior to that date, on December 27, 2022, Vonville filed his Third Double Jeopardy Motion, which the trial court denied on January 20, 2023. Because his appeal of the First Double Jeopardy Motion was still pending before the United States Supreme Court at that time, the trial court's order on his Third Double Jeopardy Motion was null and void. *See Harris*, 230 A.3d at 1127.

Critically, this Court has held that "a legally-null order renders an appeal taken therefrom likewise legally null[.]" *Commonwealth v. Green*, 265 A.3d 798, 800 (Pa. Super. 2021). Consequently, because the order denying Vonville's Third Double Jeopardy Motion was legally null, the appeal from that order, which this Court decided on November 20, 2023, was likewise legally null. *See Green*, 265 A.3d at 800. As there was no valid appeal from the denial of the Third Double Jeopardy Motion, that appeal could not act to stay proceedings before the trial court. *See id.*; *see also* Pa.R.A.P. 1701(a); *Harris*, 230 A.3d at 1127.

The trial court commenced the trial underlying the instant appeal in October 2023, over six months after the United States Supreme Court denied Vonville's petition for writ of certiorari relating to his First Double Jeopardy Motion. As there was no valid motion or appeal pending at the time, we conclude that the trial court had jurisdiction to hold Vonville's latest trial. His first issue therefore does not entitle him to relief.

**Jury Instruction: Self-Defense**

In his second issue, Vonville argues that the trial court erred in denying his request for a jury instruction on self-defense. Vonville's Brief at 29-36. He asserts that the evidence demonstrates he was not the initial aggressor, as Hernandez made threatening phone calls and text messages to Vonville in the days preceding the incident. *Id.* at 29-30, 33. Vonville further asserts that Hernandez had access to a pry bar on the night of the incident that Hernandez could have used as a weapon, and that prior to the stabbing, he saw him reaching for something in his vehicle that Vonville thought could be a weapon. *Id.*

"Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1286 (Pa. Super. 2018) (citation omitted). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the

[a]ppellant was prejudiced by that refusal." ***Commonwealth v. Sandusky***,

77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

Additionally,

[i]t is settled that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. Rather, there must be some relationship between the evidence presented and the law upon which an instruction is requested. The reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. Accordingly, a criminal defendant must establish that the trial evidence would "reasonably support" a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

***Commonwealth v. Taylor***, 876 A.2d 916, 925-26 (Pa. 2005) (citations and

quotation marks omitted).

Regarding self-defense, this Court has explained:

Self-defense is a complete defense to a homicide charge if 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly [force] to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat. 18 Pa.C.S. § 505(b)(2); ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124 (Pa. 2012); ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012); [***Commonwealth v. Knox***, 219 A.3d 186, 196 (Pa. Super. 2019)]. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent. ***Sepulveda***, 55 A.3d at 1124; ***Knox***, 219 A.3d at 196; [***Commonwealth v.***] Patterson, 180 A.3d [1217, 1231 (Pa. Super. 2018)].

***Commonwealth v. Jones***, 271 A.3d 452, 458 (Pa. Super. 2021).

This Court has also recognized that "[b]efore the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." **Commonwealth v. Green**, 273 A.3d 1080, 1085 (Pa. Super. 2022). In **Green**, we explained that a valid claim of self-defense

> may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.

> Thus, as provided by statute and as interpreted through our case law, to establish the defense of self-defense it must be shown that[:] a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself therefrom; and c) the slayer did not violate any duty to retreat or to avoid the danger.

> If there is any evidence from whatever source that will support these three elements then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court.

**Id.** (citation omitted).

With respect to the reasonable belief element of self-defense, our Supreme Court has explained:

> The requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant "must have acted out of an honest, bona fide belief that he was in imminent danger," which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be

- 15 -

reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Mouzon*, 53 A.3d 738, 752 (Pa. 2012).

The trial court rejected Vonville's request for a self-defense jury instruction, finding no evidence that he reasonably believed Hernandez presented an imminent danger of death or serious bodily injury and that Vonville had, in fact, provoked the incident as the aggressor. *See* N.T., 10/12/2023, at 202. The court explained:

> As [Vonville] readily acknowledged during the trial, he did not see a weapon. In fact, [Hernandez] did not have a weapon.

> Similarly, while [Vonville] testified that he did not remember the actual stabbing, when [Vonville] arrived at the driver's side window, he would have seen that [Hernandez] was not armed and did not have a weapon.

> Although [Vonville] attempted to make much of the pry bar, there is no evidence that [Hernandez] had the bar in his hands or that he attempted or threatened to use it as a weapon. In this regard, there was no blood found on the bar as might be expected if the bar had been in or near [Hernandez]'s hand [because] he was bleeding [after] being stabbed. In any event, a pry bar cannot kill or injure at the distance that existed between [Vonville] and [Hernandez] before [Vonville] ran to the truck.

> On the other hand, [Vonville] had a weapon—the knife he used to stab [Hernandez]. In addition, as noted, [Vonville] had seen Hernandez the night before and had assessed that he was bigger and stronger than [Hernandez].

> Additionally, [Vonville] could and should have retreated. He did not.

> Relatedly, as the Commonwealth pointed out, with support from the record, [Vonville] was the aggressor. In this regard, it is undisputed that [Hernandez] never got out of his truck and that [Vonville] ran some distance to stab him. The specific distance

was disputed. Based on information provided, and sight distances and other site conditions observed during the investigation, the investigating police officer measured the distance at 84 feet. [Vonville] testified that [Hernandez] was only 15 feet away when he saw him. However, the testimony and photographic evidence to which [Vonville] himself referred clearly indicated that the distance was much longer than 15 feet. Regardless of the actual measurement, [Vonville] ran to [Hernandez] to stab him when he could have done nothing, stayed where he was, or retreated.

Further, the threatening phone call to which [Vonville] referred occurred two nights before the killing. In the interim, the two men met, without incident, and shook hands.

Relatedly, between the time [Vonville] and [Hernandez] shook hands and the killing, there were no further communications or problems. There was, in all senses of the term, a cooling off period.

Given these circumstances, we found as a matter of law that a valid claim of self-defense was not made out. The objective aspect of the reasonable belief element was not satisfied, [Vonville]'s belief in the need to use deadly force was not reasonable, [Vonville] failed to retreat or avoid the danger, and [Vonville] was not free from fault in provoking or continuing the incident which led to the killing. In addition, [Vonville]'s actions in running a distance to [Hernandez], acknowledging [Hernandez]'s statement that [Vonville] was crazy, stabbing [Hernandez] when no weapon was present, running around the truck and smashing the passenger window to stab [Henandez] when [Hernandez] was attempting to get away from him, and jumping up and down in the back of the pickup truck in an attempt to stab [Hernandez] again are not the actions of someone who is acting in self-defense.

Trial Court Opinion, 2/14/2025, at 36-37.

The record fully supports the trial court's factual recitation. At trial, Vonville testified that he received phone calls and text messages from Hernandez in which Hernandez threatened to kill him in the days preceding Hernandez's death. N.T., 10/12/2023, at 36, 47-48. Vonville also admitted,

however, to meeting with Hernandez the day before he killed Hernandez and that no altercation occurred and that the two men shook hands and left each other on good terms. *Id.* at 128. Additionally, by Vonville's own admission, on the night he killed Hernandez, he never saw Hernandez with a weapon, Hernandez did not make any threatening remarks to him, and Hernandez never got out of his vehicle. *Id.* at 141-53. Instead, Vonville indicated that he saw Hernadez, and immediately "saw red," and proceeded to smash in the windows of Hernadez's vehicle and stabbed him twice, killing him. *Id.* at 148-53.

Based on the foregoing, we find no abuse of discretion in the trial court's determination that Vonville did not reasonably believe he was in imminent danger of death or serious bodily injury and that Vonville had provoked the incident. Cognizant that the trial judge is to determine whether a valid claim of self-defense has been made out as a matter of law, and mindful that our standard of review of a trial court's denial of a jury instruction is one of deference, we find no error or abuse of discretion in the trial court's refusal to provide a self-defense instruction. *See Green*, 273 A.3d at 1085. Vonville is therefore not entitled to relief on his second issue.[5]

---

[5] Vonville also asserts that the prosecutor engaged in misconduct by referencing the trial court's decision not to issue a self-defense instruction to the jury during closing arguments. *See* Vonville's Brief at 34-36. Vonville, however, did not object to the prosecutor's remarks at any point during closing arguments or the remainder of the trial. *See* N.T., 10/13/2023, at 37-70.
*(Footnote Continued Next Page)*

### Denial of Expert Witness Testimony

In his third issue, Vonville argues that the trial court erred in not permitting him to call Dr. Fischbein as an expert witness to testify regarding his state of mind at the time of the killing. Vonville's Brief at 36-38. Vonville asserts that Dr. Fischbein would have specifically testified regarding the state of his mental health at the time of the incident and his diagnosis with post-traumatic stress disorder ("PTSD"). *Id.* Vonville maintains that Dr. Fischbein's testimony would have demonstrated that his PTSD and other mental health issues caused him to believe Hernandez presented a danger of imminent death or serious bodily injury, and that consequently, he acted in self-defense and not with the malice required for third-degree murder. *Id.*

We review evidentiary issues for an abuse of discretion. ***Commonwealth v. Grubbs***, 330 A.3d 444, 449, 454 (Pa. Super. 2025). "An abuse of discretion is the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality, as shown by the evidence of record." *Id.* at 449 (citation and quotation marks omitted).

---

Our Supreme Court "has long held that to preserve for appellate review an objection relating to the opening or closing address of opposing counsel, the objection must be specific and brought to the trial judge's attention as soon as is practical. ***Commonwealth v. Sanchez***, 82 A.3d 943, 969-70 (Pa. 2013). Vonville did not raise an objection to the prosecutor's allegedly improper remarks at trial, and thus has waived this claim for purposes of appeal. ***See id.***

With respect to the use of expert testimony for self-defense claims, our Supreme Court has explained:

> Decisional law supports that expert testimony may be admissible to establish the defendant's subjective state of mind—whether the defendant had an honest, bona fide belief that he was in imminent danger—for purposes of presenting a theory of self-defense. However, a defendant's subjective state of mind does not establish the objective factor of the reasonableness of his belief, i.e., the belief of the need to defend oneself (or others) that he genuinely held must be reasonable in light of the facts as they appeared.

**Sepulveda**, 55 at 1125 (quotation marks and citation omitted).

The trial court explained its decision to preclude Dr. Fischbein's testimony as follows:

> In turn, since self-defense was not made out, and because the only potentially valid basis for the admission of the proffered expert testimony was to support the defense, we disallowed [Dr. Fischbein]'s expert testimony. In this regard, … PTSD is not a defense and mental health testimony … is not, despite [Vonville]'s protestations to the contrary, generally admissible to show state-of-mind whenever a defendant claims to have a mental health condition. On the contrary, expert testimony of the type [Vonville] sought to introduce must have a legitimate supporting basis, such as the subjective aspect of self-defense when the defense is otherwise made out, or, as expert testimony was intended to be used in the first trial, to establish diminished capacity.

Trial Court Opinion, 2/14/2025, at 38.

As established above, with respect to his claim of self-defense, the record supports the trial court's determination that Vonville failed to establish the objective component to his argument for self-defense—that he reasonably believed that Hernandez presented a danger of imminent death or serious

bodily injury.  Thus, while Dr. Fischbein's testimony would have supported the subjective component to Vonville's self-defense claim, the admission of the expert testimony would have served no purpose, as the objective component had already failed as a matter of law.  **See Sepulveda**, 55 A.3d at 1125.  We therefore discern no abuse of discretion in the trial court's decision to preclude Dr. Fischbein from testifying in support of Vonville's self-defense theory.

Regarding Vonville's claim that Dr. Fischbein's testimony would have negated the malice component required for a conviction of third-degree murder,[6] Vonville's appellate brief fails to offer an explanation as to precisely what Dr. Fischbein would have testified regarding Vonville's state of mind or how Vonville's mental health conditions would have precluded him from acting with the requisite malice to commit third-degree murder.  Thus, with respect to this particular argument, we have no basis to conclude that the trial court erred in precluding Dr. Fischbein's testimony.

### Jury Instruction: Consciousness of Guilt

In his final issue, Vonville argues that the trial court erred in charging the jury with a consciousness of guilt instruction based on Vonville's suicide

---

[6] To establish third-degree murder, "the Commonwealth need only prove that the defendant killed another person with malice aforethought." **Commonwealth v. Santos**, 876 A.2d 360, 363 (Pa. 2005); **see also** 18 Pa.C.S. § 2502(c).  "Malice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured."  **Id.** (brackets, quotation marks, and citation omitted).

- 21 -

attempt that immediately followed his fatal stabbing of Hernandez. Vonville's Brief at 39-42. He contends that the court wrongly issued the instruction after both he and the Commonwealth agreed that a consciousness of guilt instruction was not applicable to or necessary in this case. *Id.* at 39-40.

The trial court determined that Vonville has waived this issue "by failing to object to the instruction before the jury retired to deliberate." Trial Court Opinion, 2/14/2025, at 38. We agree. The law is clear: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury." Pa.R.Crim.P. 647(c); *see also Commonwealth v. Knight*, 241 A.3d 620, 645 (Pa. 2020) (same). In this case, Vonville did not object to the trial court's consciousness of guilt instruction at any time prior to the jury retiring for deliberations. *See* N.T., 10/13/2023, at 90-91; N.T., 10/12/2023, at 234-41. Indeed, he indicated that he was fully satisfied with the court's instructions to the jury. N.T., 10/13/2023, at 97. Thus, as Vonville has failed to preserve his challenge to the consciousness of guilt instruction for review, his final issue fails.

We note, however, that Vonville's assertion that the Commonwealth agreed a consciousness of guilt instruction was inapplicable to this case is not supported by the record. *See id.* at 3-4; N.T., 10/12/2023, at 234-41. At best, the record reflects that the Commonwealth agreed that a consciousness of guilt instruction based on Vonville's inconsistent statements at trial was

unnecessary; it made no such concession with respect to a consciousness of guilt instruction for his attempted suicide. ***See id.***

As none of Vonville's issues entitle him to relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/22/2025